## FERNÁNDEZ *v.* GUTIÉRREZ DEL ARROYO.

### APPEAL from the District Court of San Juan.

No. 107.—Decided January 30, 1906.

DIVISION OF INHERITED PROPERTY—UNIVERSAL TESTAMENTARY PROCEEDINGS.—An action seeking the division of inherited property must be prosecuted in universal testamentary proceedings and not in a declaratory action, it not being lawful for the parties to waive the special proceedings provided for by law and adopt others at their option.

DIVISION OF PROPERTY HELD IN COMMON—ACTION TO OBTAIN SAME.—An action *communi dividundo* must be directed against all the participants or coowners and not against one of them only, because otherwise the judgment which might be rendered for the division of the thing held in common would be ineffectual.

### STATEMENT OF THE CASE.

This is an action prosecuted in the District Court of San Juan by Felicia Fernández y Gutiérrez del Arroyo, of age, unmarried, property owner, and a resident of this city, represented by Attorney Rafael López Landrón, as plaintiff, against Rafael Gutiérrez del Arroyo y Umpierre, of age, unmarried, property owner, and a resident of Bayamon, represented by Attorney Eduardo Acuña Aybar, involving the rendition of accounts, the division of an inheritance, and other matters. The proceedings are pending before us on appeal taken from the judgment of said court, which reads as follows:

"*Judgment.*—In the city of San Juan, Porto Rico, August 7, 1903. A hearing was had of this declaratory action brought by Felicia Fernández y Gutiérrez del Arroyo, of age, unmarried, property owner,

residing in San Juan, and represented by Attorney Rafael López Landrón, against Rafael Gutiérrez del Arroyo y Umpierre, of age, unmarried, a property owner and resident of Bayamón, represented by Attorney Eduardo Acuña Aybar, for the rendition of accounts, delivery of property held jointly, and recovery of damages.

"1. Attorney Rafael López Landrón brought an action on behalf of Felicia Fernández y Gutiérres del Arroyo against Rafael Gutiérrez del Arroyo, attaching to the complaint, which was admitted on March 2, 1903, a certified copy of the record of the proceedings to effect a conciliation which had been unsuccessfully sought, and alleging as facts: That Ramón Gutiérrez del Arroyo, the maternal grandfather of the plaintiff, was the owner at the time of his death in November, 1876, of an estate called 'Pueblo Viejo Arriba,' with its appurtenances and accessories, and of part of the estate called 'Pueblo Viejo Abajo,' both of them situated in the *barrio* of Pueblo Viejo, jurisdiction of Bayamon, formerly Guaynabo, the former having an area of more than 800 *cuerdas*, bounded on the north by property belonging to Manuel Díaz Caneja and Cerecedo & Co.; on the east by property belonging to Cercedo & Co., Aquilino Power, now Gerónimo Landrau, Manuel Kercado, and Ulises García Salgado, now Rafael Ortiz; on the south by property of the Estate of Tulio O'Neill, Francisco García, and José de Jesús Pesquera; and on the west by the Rentas Estate and property belonging to Mauricia de los Santos and the Estate of Sagastibelza, now Modesto Ortiz Tejada; and the latter of 800 *cuerdas*, more or less, with an estimated value of 17,000 or 18,000 *pesos*, without the boundaries being given; the former was acquired by purchase by said Ramón and his brother Pedro, jointly, of an undivided half each, and the latter by inheritance; that upon the death of Ramón Gutiérrez all his property passed to the care and administration of his wife, Belén Umpierre y Díaz, until unable to continue the administration of such interests owing to illness, she transferred it to Rafael Gutiérrez del Arroyo from February 7, 1883, until 1894, when Mrs. Umpierre died, the defendant then continuing the administration of all the property of both spouses, as heir and coowner thereof; that Gutiérrez Umpierre and his wife were succeeded as heirs by force of law by their only surviving children, named Manuel, Angel, Rafael (the defendant), and Dolores Gutiérrez del Arroyo y Umpierre, and their grandchildren, the children of the deceased Carmen, named Osvaldo, Arcadio, Ladislao, Ernesto, and Felicia Fernández y Gutiérrez del Arroyo (the plaintiff); that since the death of Belén Umpierre, notwithstanding her efforts, the plaintiff

has been unable to secure the delivery of any sum by the defendant or any accounting of his administration; and that in 1900, when the plaintiff desired to enter a college in the United States to study there a profession suitable to her sex, she asked her uncle, the defendant, through the mediation of respectable persons, to deliver to her her share of the estate, or her income at least, receiving repeated refusals; and she has been brought to the sad necessity of obtaining her living by sewing. She alleged as grounds of law the first and second transitory provisions of the Revised Code, section 399 of the Civil Code; the laws of Title XV of *Partida* VI, LV; of Title V of *Partida* V and XXVI; Title XXXII of *Partida* III; article 400 of the former Civil Code; article 1720 thereof; laws 19 to 25 of Title XII, *Partida* V; sections 1726, 1101, 1724, 1888 of the Civil Code, and the decision of the Supreme Court of Spain of March 7, 1867; and availing herself of actions to recover, of division of inheritance of rendition of accounts, and of indemnity for losses and damages, she prayed that the defendant should be adjudged to render detailed accounts, duly verified and substantiated, of his administration of the Estate of Gutiérrez Umpierre and his wife, to divide the community to which the plaintiff is entitled in said property, to deliver to the plaintiff her share in said community, with interest and fruits, to indemnify her for losses and damages, and to pay the costs.

"2. Eduardo Acuña answered the complaint on behalf of Rafael Gutiérrez, alleging as facts: That upon the death of Ramón Gutiérrez del Arroyo the real property of the latter consisted of the estate called 'Pueblo Viejo Arriba' and that called the 'Quinta,' which is composed of the lands now occupied by the station of the 'Línea Férrea del Oeste;' that upon the death of Ramón Gutiérrez his widow took charge of the administration of the estate through her attorney in fact, Fernando Montilla, until upon all the participants in the estate having met, they conferred the administration upon the defendant, who rendered an approved and exact account of his admisistration, as well as of that of Montilla, to the other coheirs; but as differences arose among the participants as to the approval of the accounts and other matters, they submitted such differences by public instrument executed in Bayamon on July 4, 1895, before Notary Tomás Valdejuli, to the decision of amicable compounders, who were Francisco de Paula Acuña, Juan Morera Martínez, and José Severo Quiñones, which instrument was signed by the plaintiff; that the amicable compounders made their award, embodying it in an instrument dated September 23d of the same year, executed before the same notary, by which award not only were the accounts approved as

rendered by the defendant with a balance in his favor of $336.97, but also the payments or deliveries of property made to the heirs on account of their respective legal portions, among the payments being the sum of $2,810 paid to the Estate of Carmen Gutiérrez del Arroyo as the value of 'La Quinta' of Bayamon, delivered by the defendant to Angel Fernández as the legal representative of said estate, on January 11, 1878, and 160 *pesos* more as the value of other property; that the sixth clause of said instrument, excluding from the effects thereof the minor heirs of Carmen, refers only to Ernesto Fernández, the only one who was a minor at the time, and not to the plaintiff who had already attained her majority; that upon the defendant ceasing as administrator the only property which remained of the estate; that is to say, the farm of Pueblo Viejo Arriba, passed to the collective administration of the participants, who elected Ramón H. Patrón as administrator, and upon the latter ceasing it was leased for four years to Eleuterio Landrau; and that the defendant has made advantageous propositions to the plaintiff for the purchase of her share, without such propositions having been accepted; and alleging as grounds of law articles 1156, 1816, 1821, 348, 657, 400, 405, of the former Civil Code, and the opinions of the Supreme Court of Spain of May 11, 1878, June 19, 1889, July 13, 1892, he prayed for the dismissal of the complaint with the costs against the plaintiff.

"3. Upon evidence being taken in the action, the plaintiff submitted as public documentary evidence the instrument containing the award of September 23, 1895; the receipt executed by the sisters Iraida, Acacia, and Olimpia Gutiérrez del Arroyo, respectively, in favor of Manuel Díaz Caneja, on May 29, 1889, before Notary Mauricio Guerra; the notarial act of April 20, 1899, executed before Tomás Valdejuli, a notary of Bayamon, by the heirs of Ramón Gutiérrez, relating to the enjoyment of the 'Concepción' Estate, in the *barrio* of Pueblo Viejo, of Bayamon; the certificate of birth of the plaintiff; a report by the Reverend Bishop, confession, witnesses and private documents; and the defendant submitted public documentary evidence consisting of the certificate of birth of the plaintiff, the award of the amicable compounders, the deed of sale of coownership executed by the Estate of Pedro Gutiérrez del Arroyo in favor of the Estate of Ramón Gutiérrez del Arroyo, on July 3, 1900, before Notary Mauricio Guerra; a certificate of the service of notice of the award; the deed of sale of 'La Quinta,' executed on January 11, 1878, before José Pablo Morales, a notary of Toa Alta, by Belén Umpiérre in favor of Angel Fernández and his children; an instrument containing a compromise; a notarial act of the year 1898,

appointing Ramón H. Patrón administrator of the 'Pueblo Viejo' Estate; an act of April 9, 1901, relating to the lease and delivery of said estate to Eleuterio Landrau; the judgment rendered in the oral action prosecuted by the defendant against Patrón for the recovery of rents due him as a coowner of 'said estate; and the testimony of witnesses.

"4. The evidence submitted by both parties shows that the plaintiff, Felicia Fernández y Gutiérrez del Arroyo, was born on October 31, 1868.

"5. Both the evidence of the plaintiff and of the defendant shows that the amicable compounders, by instrument bearing No. 153, of September 23, 1895, executed before Tomás Valdejuli, a notary of Bayamon, agreed that the account of the transactions of the Estate of Ramón Gutiérrez del Arroyo and Belén Umpierre, during the administrations of Fernando Montilla and Rafael Gutiérrez del Arroyo, showed a balance in favor of the estate of $23,181.65, and 'that the special account of the administration of Rafael Gutiérrez del Arroyo, in view of the objections made to it and the explanations of 'the accounting administrator, should be considered corrected in the manner therein set forth,' showing a balance in favor of the defendant of $336.97; in addition this instrument contained an inventory of the Estate of Gutiérrez Umpierre and his wife, and an approval of the awards made on account of the respective legal portion to each of the heirs, among these approved awards being one for $2,970 in favor of the Estate of Carmen Gutiérrez del Arroyo, consisting in the value of the rest of the 'Quinta' of Bayamon ('deducting the 690 *pesos* awarded therein in payment of his credit to Angel Fernández'), $2,810; in the value of the horse 'Columpito,' $40; and in part of the furniture, $120; this instrument also showed that the real property of the estate consisted solely of the lands of the 'Pueblo Viejo' Estate; a dwelling house situated thereon, a limekiln, the walls of the employes' house, the cane-sugar mill, and the 'Quinta' in the town of Bayamon; the sixth clause of said instrument stated 'that the Estate of Manuel Gutiérrez del Arroyo not having been a party to the compromise, nor the minors who form part of the estate of Cármen Gutiérrez del Arroyo, the decision of the award did not prejudice them in the least; notice of this settlement appears to have been served on Felicia Fernández, according to the return written immediately after the original by the attesting notary in the city of San Juan Bautista de Puerto Rico, on September 25, 1895, her signature appearing thereon.

"6. It appears from the evidence submitted by the plaintiff that

Felicia Fernández took part in the execution of the instrument of compromise of July 4, 1895, appearing in this instrument and in the instrument of settlement as of age, the former providing that the amicable compounders would examine and revise the accounts rendered by Rafael Gutiérrez del Arroyo, *all of the parties thereto signing it*, settling all claims made against them by the persons interested, as well as any differences arising between such persons in connection with said accounts.

"7. This evidence, which was attached to the record, contained a copy of the instrument of May 29, 1899, by which the sole and universal heirs of Pedro Gutiérrez del Arroyo, Iraida, Acasia, and Olimpia, as judicially subrogated to the rights of the Estate of Ramón Gutiérrez del Arroyo, by virtue of proceedings prosecuted against said estate, executed to Rev. Manuel Díaz Caneja a satisfaction and cancellation of the mortgage for $9,300, which the latter had constituted in favor of Ramón on the 'Pueblo Viejo' Estate (it is not stated whether *abajo* or *arriba*), which Díaz Caneja bid in at the public sale held in the foreclosure proceedings prosecuted by the former against Rafael M. Ponte, for the recovery of part of the price of said estate, the mortgage of Díaz Caneja securing the unpaid price of the sale at public auction.

"8. It appears from the evidence of the plaintiff and defendant, that by notarial act of April 20, 1899, executed before Tomás Valdejuli, a notary of Bayamon, Dolores Gutiérrez del Arroyo, Mariana Cestero, Rafael Gutiérrez del Arroyo, Francisco Gutiérrez del Arroyo y Cestero, José María Gutiérrez, and José Jesús Pesquera, some of them in their own right and others as the legal representatives of other participants, resolved (excepting Dolores Gutiérrez del Arroyo) to appoint Ramón H. Patrón, administrator of the 'Concepción' Estate of Pueblo Viejo, consisting of 900 *cuerdas,* more or less, empowering him to lease it under certain conditions, to collect the rental and distribute it among the participants; it further appears that the plaintiff had been cited and that Mr. Pesquera had stated that he represented her under a verbal power of attorney.

"9. From the evidence of the plaintiff it appears that the Right Reverend Bishop of Porto Rico, James H. Blenk, acknowledged two letters as genuine, one of October 18, 1900, in which the Bishop is informed by a Convent of the Sacred Heart of Jesus, in the United States, that there would be no difficulty in admitting the plaintiff after Easter; and the other in which the Bishop states (November 10, 1902) that in 1900 he had obtained a free scholarship in a college in the United States for Miss Fernández, which she could not enter

because she said that an uncle of hers had refused to make her a small monthly allowance; and in a statement sent to this court on May 19, 1903, he repeated what he had stated in said document.

"10. The evidence of the plaintiff shows that the defendant having been called on to produce, if he had them, the receipts given him by the plaintiff on account of her property, he alleged that he did not have them because he had delivered, on January 11, 1878, to Angel Fernández, by public instrument, the sum of $2,810, from a farm which rented at 30 *pesos* per month, the other property of the estate producing 100 *pesos,* or 130 *pesos* in all, of which 32.50 *pesos;* that is to say, one-quarter was the share of the widow, and the remaining $97.50 were divided among seven heirs, thus giving each 13.50 *pesos,* the plaintiff and her brothers and sisters benefiting therefrom; and that it had furthermore been agreed by all the heirs that the rents of the estate should be received by the widow, Belén Umpierre.

"11. It appears from the same evidence that Augustin Stahl testified to the authenticity of a written statement made by him to the effect that Miss Fernández had commissioned him to take measures to secure from the defendant the property she had inherited; but that his efforts had been unsuccessful, for reasons which he did not state, and that they had resulted in complete failure.

"12. In the same evidence appears a document signed 'Andrés Crosas' which was made of record without acknowledgment on account of the nonappearance of the signer thereof, who was summoned as a witness, and in which document the signer alleges that Miss Fernández had commissioned him to take measures to obtain from the defendant the entire amount of her inheritance or an allowance of 30 or 50 *pesos* per month, without his having been successful.

"13. The proof of confession of the defendant could not be taken on account of counsel for the plaintiff not having attended the hearing and no interrogatories having been prepared previously, and witness Angel Fernández, the father of the plaintiff, did not testify because he did not attend the hearing.

"14. It appears from the evidence submitted by the defendant that on July 3, 1900, by deed executed before Mauricio Guerra, a notary of San Juan, Iraida, Acasia, and Olimpia Gutiérrez del Arroyo y Montilla, as the sole and universal heirs of Pedro Gutiérrez del Arroyo, sold to Dolores Gutiérrez del Arroyo, who accepted the conveyance in his own name and on behalf of the other heirs of Ramón Gutiérrez del Arroyo, in compliance with a final judgment rendered in the proceedings brought by said Ramón against the estate of the aforesaid Pedro, an undivided half of the rural estate called 'Pueblo

Viejo Arriba,' for the sum of 18,000 *pesos,* received prior to the execution of the instrument.

"15. It also appears from such evidence that by deed number 3, executed before José Pablo Morales, a notary of Toa Alta, on January 11, 1878, in the town of Bayamon, Belén Umpierre, as the widow and executrix of Ramón Gutiérrez del Arroyo, the assignee of the hereditary rights of her daughter, Juana, a nun, and as the guardian *ad bona* of her minor children, Rafael and Jesús María; Fernando Montilla, on behalf of his wife, Dolores Gutiérrez del Arroyo, and Manuel and Angel Gutiérrez del Arroyo in their own right, delivered to Angel Fernández Umpierre, in his own right and on behalf of his minor children had by his marriage with Carmen Gutiérrez del Arroyo, named Osvaldo, Felicia, Arcadio, Ladislao, and Ernesto, a house with its lot of 6 *cuerdas* on Palma street, in Bayamon, belonging to the estate by purchase from Rafael M. Ponte, valued at 3,500 *pesos,* the delivery being made in payment of 690 *pesos* owed by Umpierre, their predecessor in interest, and the remainder, amounting to 2,810 *pesos,* to the credit of the estate of their grandfather, which the minors were to receive; Fernández accepted the appraisal of the estate, which is said to be 200 *pesos* less than the amount for which it was purchased.

"16. It also appears from said evidence that in proceedings of voluntary jurisdiction before the municipal judge of Bayamon, by deed of April 9, 1901, Rafael Gutiérrez del Arroyo, in his own name and on behalf of Dolores Gutiérrez del Arroyo and Eleuterio Landrau, whose capacity does not appear, resolved, by a majority of the participants, as stated in said deed, to lease the Estate of 'Pueblo Viejo' to the last named.

"17. It appears from the same evidence that the municipal judge of Bayamon rendered judgment on July 19, 1901, in the proceedings instituted by Rafael Gutiérrez del Arroyo against Ramón H. Patrón, as the administrator of the Estate of 'Pueblo Viejo,' adjudging the latter to pay to the former the sum of $310 claimed as the rental of said estate, and the costs.

"18. Witnesses Francisco de P. Acuña and Juan Morera Mantínez testified that they had rendered the arbitral decision which appears in this record, the plaintiff represented by her father, Angel, whom she had commissioned for the purpose, taking part in the proceedings before the amicable compounders; witness Santos Filippi testified that he had endeavored to sell the share of the plaintiff to the defendant, but that no agreement as to price could be reached.

"19. The oral hearing of this cause having been had, counsel for

the plaintiff did not appear, but moved for a continuance on account of sickness, which motion was denied because it did not conform to the provisions of the Law of Civil Procedure; counsel for the defendant made his argument, and the judgment was voted upon at a public hearing with the citation of the parties.

"20. The legal formalities have been observed in the conduct of these proceedings.

"Associate Judge JOSÉ TOUS SOTO prepared the opinion of the court.

"1. With regard to the action for an accounting, although an agent is under the obligation to render accounts to his principal, and the defendant, therefore, was under the obligation to render such accounts to the other heirs of Gutiérrez del Arroyo Umpierre and his wife, who entrusted him with the administrative management of the estate, it is no less true that said defendant complied with said obligation by rendering a general account of his administration, the examination and approval of which was submitted by the plaintiff, who was at that time twenty-seven years of age, to the decision of amicable compounders, who, in pronouncing their judgment approving said accounts (notice of which was served on the plaintiff and no appeal taken), held the obligation now again claimed of him to have been complied with.

"2. With regard to the action for the division of the property held in common, as such property belongs to two undivided testate estates, an action seeking the division of inherited property must be prosecuted in universal testamentary proceedings and not in a declaratory action, it not being lawful for the parties and much less for one of them, to waive the special proceedings established by the law of procedure in the public interest, in favor of any others they may choose arbitrarily; and, on the other hand, an action *communi dividundo* must be directed against all the participants or coowners, and not against one of them only; because otherwise the judgment which might be rendered for the division of the thing held in common would be ineffectual, as would occur in this case (if the action *communi dividundo* were not really an action *familiae reciscundae* or for the division of an inheritance) in which the defendant having acquiesced to the division it would not be possible to order it without affecting the interests of the other participants who have not been parties to this litigation, and perhaps also persons who are strangers to the estate, who, likewise have not taken part in the litigation.

"3. With regard to the action for recovery seeking the delivery

to the plaintiff by the defendant of the share which she would receive by virtue of the division of the property of the community, with its products and interest, as such delivery would follow the division of the estate, the same reasons militate against the success of such action in this litigation, as against the action for the division of the estate, apart from the fact that there is no evidence that the defendant is withholding property in which the plaintiff has any participation; but, on the contrary, that part of the property inherited was delivered to the father of Miss Fernández on account of the legal portion of his children in the estate of their grandparents, Gutiérrez del Arroyo Umpierre and his wife, by right of representation of their mother, Carmen Gutiérrez del Arroyo y Umpierre, which delivery, although made when Miss Fernández was a minor, was ratified by her in accepting the arbitral decision approving the several deliveries of property to the heirs; and the 'Pueblo Viejo' Estate, which is the special subject of the complaint, has been administered by the co-owners, an administrator having been designated for the purpose, and subsequently leased, the defendant not having in these acts any more intervention than any other coowner; and with regard to the other Estate of 'Pueblo Viejo Arriba,' also the special object of the complaint, there is no evidence whatever that the plaintiff has any right of ownership or possession therein at the present time.

"4. With regard to the action for the recovery of damages, which have not been proved, there is no indication even that the defendant has caused such damages to the plaintiff, nor has it been proved that she has suffered any loss through the refusal of the defendant to make her an allowance on account of her hereditary portion, and as there is no obligation on the part of the latter to make her such allowance, the former cannot have the correlative right of demanding damages for failure to comply with such obligation.

"5. The costs should be imposed upon the parties whose claims are rejected in all respects."

*Mr. López Landrón* for appellant.

*Mr. Eduardo Acuña* for respondent.

MR. JUSTICE FIGUERAS, after having stated the foregoing facts, delivered the opinion of the court.

We accept the findings of fact and conclusions of law contained in the judgment appealed from, although we must explain that in the twenty-second line of the third conclusion

of law, where it says "the other Estate of 'Pueblo Viejo Arriba'," it should read "Pueblo Viejo Abajo."

In view of the provisions of articles 1156, 1816, 1821, 348, 657, and 400 of the former Civil Code, and the moral and juridical principle that a person is estopped from denying his own facts, we adjudge that we should affirm, and we do affirm, the judgment rendered on August 7, 1903, by the District Court of San Juan, and we tax the costs of the appeal against the appellant, and order that the record be returned with a copy of this decision, for the proper purposes.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, MacLeary and Wolf concurred.